Good morning, I'm Mark Griffin. I represent the plaintiff in this case, McWilliams. The clerk asked that I give the court status report on cases that are now pending in the state court. Scherzinger v. Custodians Civil Service Board, which is a consolidated case dealing with a mandamus action and a writ of review action in the lower court, has been fully briefed and it's a court of appeals in Oregon. What does that mean practically to those of us who are not from Oregon? What's the likelihood of when it will be argued? I think it will be argued probably within the next three months and I think you're looking at a decision within a year to two years. That's my best guess and that's just a guess. Portland Public School District v. Custodians Civil Service Board et al., which is an injunction case preventing the appellant's brief was filed on April 27th. The appellee's brief will be filed in mid-June or later if they get an extension. So full briefing in that case probably by September 1st and then a wait oral argument. The final case is Grant Walter v. Ant-Local 140. It's what's called the ERB case, the Employee Relations Board case. That case has been fully briefed and argued and we're waiting a decision. I think it was argued in March of this year. But it's not my case so I'm not sure. Maybe Mr. Walter can tell you. The third case, would that be dispositive of this one if you were to prevail? If the appellant is to prevail in that case, it would certainly help our case but it's not necessarily dispositive because the issue in that case, and it is the problem that runs throughout all of these cases, is what the ERB decided. The issue that was before the ERB was whether or not the school district could negotiate contracting out for custodial services. That was the issue that was presented to the ERB. The ERB decided that it was not in violation of either PECPA or, which is the Public Employee Collective Bargaining Act, or the Custodian Civil Service Act to negotiate with respect to contracting out. The difficulty with the extrapolation of that by the courts, including the court in this case, was that the ERB never decided that you could terminate current employees in order to contract out. They only decided that it wasn't a violation of the CCSL, the Custodian Civil Service Law, to contract out. In other words, you can outsource custodians, as that's what they said. And if you outsource custodians, if the school district outsourced custodians, then the Custodian Civil Service Law would not apply. Now, we disagree with that, but the implication of that has been taken to an extreme. That doesn't resolve the problem of can you terminate a current employee who is protected by the Custodian Civil Service Law in order and replace that employee with an outsourced employee. They never decided that. And as a matter of fact, the ERB... I understand, perhaps theoretically, the distinction, but I have to say I don't know that I understand the practical distinction. Because aren't they saying, in effect, the Civil Service Law doesn't provide protection? And if it doesn't provide protection, what does? No, they're saying the Civil Service Law does not provide protection for people who are not employees. The ERB specifically said that the Civil Service Law, the Custodian Civil Service Law, does provide protection for current employees. Now, I represent current employees, and the Civil Service Law says that current employees cannot be terminated except for cause. And my clients were not terminated for cause. What about the appeal of Judge Wilson's order on the mandamus? Would that be dispositive of this case? Again, it would be very helpful to us. It's not dispositive if we lose. Because the issue that I see that's different is that when Judge Wilson extrapolated on the ERB decision, what she decided was that the Custodian Civil Service Board did not have jurisdiction to order reinstatement or even to investigate the terminations, which means that in the context of a civil rights case, since we've alleged that our clients have a property interest and have a due process right to some sort of hearing, it means they haven't had any hearing. Didn't she rule that they were not dismissed if they were laid off? She did say that they were not dismissed under the terms of the CCSL. That doesn't mean they weren't dismissed. And also in this particular case before the district court here, there was additional evidence put on. And we think that's a fact question. And by the way, we think she was wrong with that. What I'm saying is if she's affirmed on that. If she's affirmed on that, that does not necessarily dispose of the issues here because there's additional evidence in the record in the district court case that was not in the case before Judge Wilson. Why do you get to put that evidence in the record? I mean, why isn't her finding that they were not dismissed preclusive? Because the evidence, whether someone has been dismissed or laid off, can be determined partly by a question of timing. The school district said they're laid off because we say they're laid off. There's a possibility that they're going to be rehired. Well, as time goes by, you know that they're not going to be rehired. Judge Wilson's case was long before the case before the district court. So there was additional evidence to show that the school district had no intention of rehiring my clients. Even though they said they were laid off and there was a possibility and they wouldn't rehire them, there was more evidence developed that in fact they did not intend to rehire them and these people would never be rehired. So it's not dispositive in that respect either. The difficulty, again, goes back to the ERB decision and the misinterpretation of the ERB decision. I think the important language in the ERB decision is this. The mandatory language of the custodian civil service law takes effect only if the custodians are employees of the district. Well, my clients were employees of the district. Therefore, what the ERB is saying is that the mandatory language applies to them, including their rights with respect to termination. They said that twice, as a matter of fact. Were there negotiations prior to the contracting out? Excuse me? Were there negotiations with the union prior to the contracting out over the terms? Well, the ERB decision relates to whether, yes, there were negotiations ongoing when the ERB case was filed by the union. The collective bargaining agreement had not expired yet, but there were negotiations. Were there negotiations over the contracting out? Any kind of discussions as to the terms of the contracting out? What the ERB decision was all about was that the union was complaining that the district was threatening to contract out. And what they were saying was that's illegal under PECPA because it violates the CCSL, the custodian civil service law. So, yes, there were discussions. Were there negotiations? The negotiations were one-sided, where if you don't agree to what we're doing, then we are going to contract out. And what the union was doing in the ERB case was saying that's illegal. You can't do that under PECPA. Thank you. Thank you. I may have placed the card. William Walters for the Portland School District. If I may, Your Honors, can I back up and make a couple of comments regarding the status of matters in the Oregon courts? Just so you have this before you for whatever purposes you may need. There are really three appeals that have been brought out of this case into the Oregon Court of Appeals. One of them came out of two cases. They were consolidated for purposes of appeal. That is the Scherzinger case, which counsel first mentioned, and the ERB case, which he mentioned third. Those cases were consolidated for purposes of argument. Argument was held on November 17 of last year. As to when the court could reasonably expect opinion, that's much harder to say. It's too well known. But it's been, what, almost six months, so what I would tell my clients is you could reasonably expect an opinion most any time now. Don't hold your breath. We don't know what you mean. Just for completeness purposes, the second case to be before the Court of Appeals is the appeal from the Janice Wilson cases. Judge Janice Wilson, Multnomah County Circuit Court. There were two cases there. They were heard together at the circuit court and are together on appeal. And that case, or those consolidated cases, are awaiting oral argument. The reply brief was filed in March. Probably in a couple of months, argument will be heard. They are really the same issues, I think the Court's aware, as we're involved with the ERB case. ERB cases likely be dispositive. There's a third case, and this relates to this. Do they all go to the same Court of Appeals? Yes. We sit in three judge panels. We have a single Court of Appeals here, a ten-member court. They sit in three judge panels. There's no guarantee they'll go to the same panel. They go to the same court, and they try to coordinate. There's a third case, which has been before the Barrington Court of Appeals, which relates a little bit to Judge Reinhardt's question. Yes, the issue of the district's proposal to contract out was negotiated on an interim basis between the union for the custodians and the district. Negotiations reached an impasse, and the district, as it was entitled to, implemented its proposal to contract out. But the union did bring unfair labor practice with the Employment Relations Board, ERB, in which the issue of essentially the good faith of the district in those negotiations regarding the contracting out was at issue. That ERB appeal, in ERB, the ERB rule in favor of the district found that there was no violation of law that the district had in effect bargained in good faith. The union appealed that to the Oregon Court of Appeals. That's the third one, I say. The union has dismissed that appeal, and the Court of Appeals has issued an order allowing the dismissal of that appeal. So any issues which sort of arise out of the bargaining which did take place are now by the way. Turning to – To what extent, in your view, will the first appeal – I didn't hit the beginning. To what extent, in your view, would the first appeal resolve the issues in this case if it came out, A, in your favor, B, in your opponent's favor? Completely, Your Honor. Either way? If it comes out in our favor, yes. If it comes out in their favor, I need to read the opinion and see just – see what – I mean, we know what the ruling of the ERB was. Yeah. I mean, conceivably, it's an administrative agency. Conceivably, a Court of Appeals could say, gee, I need you to go back and look at this again. In which case, who knows? I think that's very unlikely. I think the issue's a clear issue, clearly framed issue of statutory interpretation. What does the civil service law here, the custodian civil service law, the CCSL, mean with regard to this proposal of the district? And by the way, you might want to look in this regard at ER 33, which is part of the – of ERB's opinion, the case we're talking about, where they describe the issue as the district's proposal to contract out its custodial services to a private provider and lay off all custodial employees. You might want to look at that page. What does laying off mean in context as far as the district's concerned? That they would have a right to reemployment if you ever again decided to open a janitorial department? Or do they have a right to any other jobs in the district? The term layoff here comes out of the collective bargaining agreement. It's not a statutory term. The statutory term at issue is discharged. Were the employees discharged? And every court that's looked at this has concluded, either by independent investigation or on issue preclusion job reasons, and it's issue preclusion, which is really the issue in this case, that these employees were not discharged. Well, that's what I'm trying to find out. What does it – why – they were not discharged because they have what? They were not discharged because, as a matter of law, the district was entitled to decide not to have custodial employees. That is to say, to privatize the contract out. Their jobs have been ended and terminated. Correct. Not just that their jobs have been terminated, but, yeah, those positions have been ended. It's not, as it were, their jobs, it's the jobs. What are they left with in the status of laid off – they're laid off employees. Yes. Which means what is their connection with the company? I believe that their layoff rights include, and I think only include, the right to be rehired within a two-year period if, during that – for any reason during that time, the district decides to reinstate those positions. I'm not a labor lawyer. I think that's the extent of the reinstatement. There may be a little bit more under the collective bargaining agreement itself. The district said to somebody, we're firing you because you're a lousy employee. Yes. But we're going to say you're laid off because if we ever decide to rehire you in two years, we're going to rehire you. Yes. You wouldn't be fired either. Although, presumably, nobody could be hired for that position. I mean, the hypothetic would have to say the position is – That's right. Disappears. And in this case, I mean, what is notable in part about this case is that there was no individual determination here regarding any particular employee. It was that the district, for budgetary reasons, decided that there would be significant savings on Texas budgetary prices if they determined to not have custodial employees but rather were to have a private provider provide for those services so that the positions were completely eliminated. No, I don't – I mean, I have no idea what the argument was, whether you have a right to do that or not. But, I mean, I understand the idea of contracting out, ending your positions, hiring an independent company for less to do the same job. We even hire independent companies to fight a war in Iraq. Me too. So I understand the concept. My only question was when you do that. Yes. And you tell the employees who have done those jobs that you're no longer needed. Don't bother to work here anymore. Yes. What it means that they have a layoff, right? And I think you've answered the question. It means if you decide that someday in the next two years you don't like contracting out, you're going to reestablish a new janitorial department. Yes. But then you will let those people have first practice. Yeah, then under the collective bargaining agreement, they have certain rights. That is not a discourage. That's a layoff. Yes. I would turn back and emphasize, as I assume I only have a few moments here left, that the issues before this court are really those of judicial preclusion. I mean, GERB made certain decisions, certain interpretations of the CCSL, the governing state law. The argument here is that these folks had a protected property interest and continued employment. That's the basis for the 1983 claim. That relies on state law. What does the state law provide? The GERB in the first place, Judge Wilson, secondly, have held, Wilson independent of GERB, that the state law doesn't, in effect, not in these words, have held in effect that the custodians had no continued protected property interest in their job. They didn't, and this was the holding of both because the state law issue permits the district to eliminate those positions, the custodial positions. If the GERB case is reversed, then what happens? That was the question that Judge Reinhart put to me, and I would assume that because it's a very straightforward issue of law, at least it appears to be, what does the CCSL mean in this context? Could the district, consistent with the CCSL, do what it did or not? GERB said it could. Wilson said it could. Later on, another judge said it could. Judge Frye below has relied on these for issue preclusion purposes. There's been no argument here today, directly, I think, that issue preclusion isn't dispositive of this case. If the Court of Appeals, however, reverses GERB, if it reverses it on— That's the underpinning of the whole thing, right? It's the underpinning of the whole thing, though independently supported by Wilson, and she ruled in the alternative on this. GERB is preclusive, but I find the same thing myself. If GERB, if the Court of Appeals reversed on the specific legal issue, then the district's in deep trouble. I mean, they're going to have, presumably, what they've done is wrong. They're going to have to hire people back and so forth and so on. If the Court of Appeals reverses for some other reason, which, you know, I— No, you know, you never know what these telequests are going to do, but— Then who knows, but— My question is, should we hold off doing our thing until we see what happens with the GERB case? That's kind of up to you. I mean, as you well know, though these various decisions are on appeal under Oregon law, the pendency appeal does not perfect— does not affect the preclusive effect of these opinions. So I would argue to you, and I guess I have, that whatever is going to happen at the Court of Appeals, or perhaps later on, should concern you, because as things come to you, the decisions of ERB and independently Janice Wilson were binding on Judge Frey, and she should be affirmed for that— And if we affirm Judge Frey and then the ERB case gets reversed, then what happens? I'm not sure. What happens if the ERB case comes down tomorrow? You say it's been argued— Then it'll— Any day it can come. What would we do with our decision? Would we say it's still precluded, or would it no longer be? No, I think—I believe you would be applying Oregon law in that regard, and Oregon law would have changed while you were writing, and that might require you to—I mean, I think that's the reality. If the Court of Appeals comes down tomorrow and does not affirm ERB, then we've got to read the opinion and rethink where we are, and it may be that—it could be that the district is in deep water here. It could be that that's the final nail in the coffin. All right. I thank you. I think we—that was very helpful. Thank you. Great. Thank you very much. Let's get to the issue of preclusion now, or grand preclusion or whatever preclusion. Why is it that the—you said, well, we've got some additional evidence. Is that the only reason that this—we're not precluded by the fact that Oregon has resolved the question? No, I think if we go back to the ERB thing, which I think is the linchpin of all of these mistakes that have been made by the courts, if we go to that, what the ERB decision will involve is whether or not my clients have a right to a hearing under the custodian civil service law. However, because they have a property interest in their jobs, which is established not only by state law, but also by history, by expectations, and there's evidence of this, because they have a property interest, they have a right to some sort of hearing. So even if ERB said you don't—custodians don't have a right to a hearing under the custodian civil service law, they still would have a right to a due process hearing for being terminated without cause. And you said you didn't ask the Oregon courts for a hearing under due process? We didn't ask the Oregon courts for a hearing on anything. We were brought into court, but we were sued by the district. And we brought the Mandamus case because we were trying to enforce—in that instance, we were trying to enforce the order of the custodian civil service law. In our stream of cases, we have tried to make a distinction between the status of our clients as union members and covered by PECPA or as civil service employees because they have rights—their rights differ as union members and as civil service employees. We think that the civil service rights are more extensive. With respect, if I may, with respect to the layoff— basis for your rights that was not presented to the Oregon courts, and that's a due process right that exists, whether or not the state statute gives you the right? Yes, whether or not the state statute gives you the right, our civil service employees still had a reasonable expectation of continued employment, therefore would have a right to a due process hearing. And if Herb says that you don't have a right to a hearing by the custodian civil service board, you still have a right to a hearing because you have a protected property interest over and above your interest that you might have under the statute. So what's the source of that? What? What's the source of that? The regents, the California regents versus Roth. You're speaking of a federal due process right? Federal due process right. But doesn't that depend upon there being a right, a protected interest in the first place? And suppose you didn't have a civil service law. Suppose we have the bad old days and the spoils system and everybody is a patronage employee. Are you suggesting that if there was no civil service law, there would still be a federal due process right? In this instance, perhaps, because in a number of cases, for example, in that case, that was a temporary employee. That wasn't a civil service employee. And that's true in a number of cases that's come down off the Ninth Circuit and also other circuits. Yes, as long as you have a reasonable expectation of continued employment. Even if you're not a civil service employee, you have a due process right if you're working for a government. That is true, yes. You don't have to be a civil service employee to have a due process right. I want to address, I know my time's up. Mr. Walter is correct with respect to the layoff. That's terminology out of the collective bargaining agreement. But whether or not somebody's been laid off or fired is a factual issue. And the district court decided a factual issue when there was a dispute as to those facts. But the language itself comes from a section of the collective bargaining agreement that relates to reduction in staff. There has never been a reduction of staff by the Portland School District. There's been a replacement of staff. But there was no reduction in force. My clients were replaced on almost a one-to-one basis and couldn't have been replaced on a more of a basis. There's a reduction in the school district's force. They haven't replaced it. They've contracted that function to another company. But their own staff has been reduced. Yes, but there are not fewer custodians in the school district. There are fewer school district employees. That's true. There are not fewer custodians remotely. There are none. That's exactly right. And that's why this is so important. What the school district has done is abrogate civil service rights and civil service law. Just by saying you're laid off and the CCSB doesn't apply to you. The CCSL doesn't apply to you. Nothing applies to you anymore. You're laid off in the middle of a contract, in the middle of expectations. Well, that's a good question about our gun law, I guess. Understand you have a separate argument. Yes. Is it a practical matter? Is there a reason for us to act knowing that a decision may be imminent? And if you win in that case, that makes this case much simpler for you. I think as a practical matter, you might want to delay your decision until some of these other cases are decided and then revisit it. Unfortunately, both of us were in a position where you have to file an appeal when you file an appeal. That's why we're here, maybe a little early. Certainly, I think it would be practical for you to do that. But, again, even if we lose on the ERB case, it doesn't, it does not dispose of the issues in this case. Good. We trust that if something does come out, you'll promptly let us know. Yes. Both of you, please advise us when there is a, when there is a decision. We would appreciate you both sending us copies of the decision and maybe within 10 days afterwards, would each send us a brief statement as to what you think the effect of the decision is on the case. We will do so. Thank you. Thank you. Case just argued is delivered. Next case for argument is Alpha Energy v. Hanson.
judges: Reinhardt, Silverman, Clifton